# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

BARRY SIEGEL,

                *Plaintiff,*

-against-

EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., and TRANS UNION, LLC,

                *Defendants.*

Index No. 152583/2024

**COMPLAINT**

**JURY TRIAL DEMANDED**

By and through the undersigned counsel, Plaintiff Barry Siegel ("Plaintiff"), with knowledge as to his own acts and investigation of counsel as to the acts of others, and believing that further investigation and discovery will confirm that the allegations recited herein have substantial evidentiary support, states as follows:

### Introduction

1. Pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the New York Fair Credit Reporting Act, N.Y. GEN. BUS. LAW § 380 et seq. ("NY FCRA"), Plaintiff brings this civil rights action against Defendant(s) Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), And Trans Union, LLC ("Trans Union") (together, Equifax, Experian, and Trans Union are the "CRA Defendants") to recover actual, statutory, and punitive damages. In addition, Plaintiff is entitled to an award of costs and attorney's fees in this fee-shifting action.

2. In 1970, Congress passed the FCRA and enshrined within it the "need to insure that consumer reporting agencies" like the CRA Defendants "exercise their grave responsibilities

Page **1** of **14**

with fairness, impartiality, and a respect for the consumer's right to privacy." FCRA § 1681(a)(4).

3. The purpose of the FCRA is "to require that consumer reporting agencies" like the CRA Defendants "adopt reasonable procedures for [reporting information] a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information . . . ." § 1681(b) (emphasis added). *See Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017) (observing that the purpose of the FCRA is to address the "serious problem in the credit reporting industry . . . of inaccurate or misleading information"); *Porter v. Talbot Perkins Children's Servs.*, 355 F. Supp. 174, 176 (S.D.N.Y. 1973) (stating that "[t]he purpose of the Fair Credit Reporting Act is to protect an individual from inaccurate or arbitrary information about [that individual from appearing] in a consumer report . . . .") (citing 116 Cong. Rec. 36572 (1970)).

4. The public policy objectives underlying the FCRA remain relevant and compelling today as ever. As recently as October 2022, Congress recognized the CRA Defendants' continued systemic "failures to efficiently respond to and resolve credit reporting inaccuracies raised by consumers."

5. The bipartisan subcommittee's investigation found "longstanding problems with" the CRA Defendants' "practices for responding to consumers who challenge credit report errors."

6. For example, the investigation found that the CRA Defendants "disregard millions of disputes each year without investigation" based on "speculative or overly broad criteria," in a manner "contrary to the FCRA."

7. Evidence further suggested that the CRA Defendants "may not be allocating enough staff to adequately investigate disputes."

8. The CRA Defendants' policies and procedures to avoid inaccuracies are so insufficient that they often fail to identify and remove even "facially false data," including entries that are "logically inconsistent" or "impossible."[1]

9. The congressional subcommittee found that the CRA Defendants "have attempted to shift the responsibility–and blame–for the accuracy of consumer report data onto data furnishers."[2] Instead of fulfilling their independent investigatory duties under the FCRA, the CRA Defendants "engage in 'parroting,' a practice of blindly adopting the response of a data furnisher without conducting any independent investigation."

10. Such investigations are "insufficient" under the FCRA.[3]

11. Congress's findings echo what juries and courts have long found in individual cases regarding damages: FCRA violations can have "serious, long-term consequences for consumers, such as blocking access to permanent housing or preventing small businesses from obtaining much-needed lines of credit."[4] Consumers like Plaintiff "are experiencing no small measure of stress, frustration, and financial hardship as a result of [the CRA Defendants'] failure to correct legitimate errors on their credit reports."[5] As recounted below,

---

[1] *See generally Advisory Opinion on Fair Credit Reporting; Facially False Data*, Bureau of Consumer Financial Protection, 12 CFR Part 1022 (October 20, 2022).
[2] *Letter from Chairman Clyburn to the Consumer Financial Protection Bureau*, 5, 117th Congress (Oct. 13, 2022), https://coronavirus.house.gov/sites/democrats.coronavirus.house.gov/files/2022.10.13%20Clyburn%20to%20CFPB%20re%20Credit%20Reporting.pdf.
[3] *Select Subcommittee Requests CFPB Review After Investigation Finds Nation's Top Credit Bureaus Failed to Address Errors in Consumer Credit Reports, Press Release, supra,* (citing *Automated Injustice Redux, Ten Years after a Key Report, Consumers Are Still Frustrated Trying to Fix Credit Report Errors*, National Consumer Law Center (February 2019), http://www.nclc.org/wp-content/uploads/2022/08/automated-injustice-redux.pdf.)
[4] *Select Subcommittee Launches Investigation Into Credit Reporting Failures During Pandemic, Press Release*, 117th Congress (May 25, 2022).
[5] *Letter from Chairman Clyburn to the CFPB, supra,* at 7.

Page **3** of **14**

Plaintiff suffered extensively as a result of Defendants' violations of his consumer rights under the FCRA.

## Summary of Plaintiff's Claims Against Defendants Pursuant to the Fair Credit Reporting Act and/or New York Fair Credit Reporting Act

12. Defendant(s) Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), And Trans Union, LLC ("Trans Union") (together, the "CRA Defendants") violated General Business Law § 380-j (e) and 15 USC § 1681e (b) by failing to maintain reasonable procedures to assure the maximum possible accuracy of information it reported about Plaintiff.

13. Each CRA Defendant violated § 380-j (a) (3) by maintaining in and reporting from the credit file it maintained about Plaintiff information it had reason to know was inaccurate and that, in fact, resulted when Plaintiff was the victim of identity theft.

14. The CRA Defendants violated General Business Law § 380-j (e) and 15 USC § 1681e (b) by failing to maintain reasonable procedures to assure the maximum possible accuracy of information they reported about Plaintiff.

15. Each CRA Defendant violated General Business Law § 380-f (a) and 15 USC § 1681i (a) (1) by failing to conduct reasonable investigations after Plaintiff disputed certain information in credit reports it published about him.

16. Each CRA Defendant violated General Business Law § 380-f (b) (1) and 15 USC § 1681i (a) (5) by failing to promptly delete disputed information from credit files they maintained about Plaintiff despite the fact that, had they conducted reasonable investigations of Plaintiff's disputes, they could not have affirmatively verified that the disputed information was accurate.

17. Each CRA Defendants violated 15 USC § 1681c-2 by failing to block the reporting of information in Plaintiff's file that Plaintiff identified as having resulted from identity theft.

18. Each CRA Defendant violated 15 U.S.C. §§ 1681i (c) by failing to provide Plaintiff's duly filed statement of dispute in subsequent consumer reports containing the information in question.

19. Each CRA Defendant violated 15 USC § 1681i (a) (6) (B) (iii) by refusing to provide Plaintiff with descriptions of their reinvestigation procedures upon request.

20. As a direct and proximate result of Defendants' violations of the FCRA and NY FCRA recounted above, and as further described herein, Plaintiff suffered cognizable actual damages.

## Jurisdiction and Venue

21. The jurisdiction of this Court is conferred by 15 U.S.C. § 1681(p).

22. Venue is proper in this Court under New York Civil Practice Law and Rules ("CPLR") § 503 because Plaintiff resides in New York County.

## The Parties

23. Plaintiff Barry Siegel is an individual and "consumer" within the meaning of the FCRA (15 U.S.C. § 1681a(c)) and NY FCRA (NY GBL § 380-a(b)). Plaintiff resides in New York County.

24. Defendant Equifax Information Services LLC is a Georgia limited liability company, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

Page **5** of 14

25. Defendant Experian Information Solutions, Inc. is an Ohio corporation, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

26. Defendant Trans Union LLC is a Delaware limited liability company, duly authorized and qualified to do business in the State of New York, and is a "consumer reporting agency" within the meaning of the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

## Statement of Facts

27. As each CRA Defendant is well aware, Plaintiff Barry Siegel has been a Citibank customer for decades. In June 1982, he opened the Citibank credit card account at issue in this action, which recently was associated with Mastercard and a number ending in 6003 (the "Citi Mastercard").

28. Mr. Siegel is a disabled veteran who served in combat in the Vietnam war. He is also a cancer survivor.

29. Mr. Siegel also owned an American Express card associated with Bloomingdales and Citibank (the "Citi AMEX").

30. Mr. Siegel also owned a third Citibank card not at issue in this action.

31. As each CRA Defendant is well aware, Mr. Siegel has always made timely payments on his Citibank cards and, indeed, all his credit accounts. For four decades, Mr. Siegel was never delinquent on payments on the Citi Mastercard or any of his credit accounts.

32. Mr. Siegel has never filed an FCBA or FCRA dispute or claim regarding any of his credit cards nor has he ever disputed information on any of his credit reports with Experian, Equifax, or Trans Union.

### *The Identity Theft*

33. In September 2022, Mr. Siegel's identity was stolen, and through fraud, his Citi Mastercard was taken over by the thief.

34. The theft resulted in a charge of 1870 Euro ($1,879.68) on Mr. Siegel's card.

35. Though Mr. Siegel was not notified at the time of the transaction, immediately upon becoming aware of the charge. Mr. Siegel timely filed FCBA disputes to Citi.

36. In disposing of Mr. Siegel's dispute(s), Citi said that "[b]ecause you disagree with the resolution of your dispute, we will request the reporting agencies [Experian, TransUnion, and Equifax] to add a note to your credit profile stating that the information is 'disputed by the consumer.'"

37. As of January 16, 2023, Plaintiff's Experian and Equifax credit reports indeed marked the Citi Mastercard account as disputed.

38. However, Plaintiff's Trans Union report from that date failed to mark the account as disputed.

39. On January 27, 2023, Mr. Siegel filed an affidavit with the Federal Trade Commission about his Citi Mastercard account, identifying it by number and declaring that an identity thief had made $1,879.68 in fraudulent charges on it.

40. On or around February 17, 2023, Mr. Siegel sent a letter to Citi's Customer Service / Dispute Department at their Sioux Falls, South Dakota address again disputing the charge, noting that he had paid off his "legitimate balance" on the card, and telling Citibank to close the account. Mr. Siegel attached the FTC Affidavit and identifying information. Citi confirmed receipt of this letter on March 2.

### *Plaintiff's First FCRA Dispute*

41. In late February 2023, Mr. Siegel also sent a letter to Experian, Equifax, and TransUnion asking them to correct their reporting of the Citi Mastercard account, which incorrectly showed an outstanding $2,400 balance resulting from the identity theft.

42. Mr. Siegel explained the circumstances of the fraud and informed the bureaus of his February 17 letter telling Citibank to close the card.

43. Mr. Siegel attached the FTC Affidavit along with his Citi Mastercard statement and other evidence.

44. On March 2, Trans Union refused to block the account in violation of the FCRA.

45. On March 3, Experian refused to block the account in violation of the FCRA.

46. On March 7, Equifax, too, let Plaintiff know that it had not blocked the account, instead reporting it with the comment "Reinvestigation in Progress."

47. On March 21, Trans Union verified its false reporting of the fraudulent balance on the Citi Mastercard account.

48. On March 22, Experian verified its false reporting of the fraudulent balance on the Citi Mastercard account.

49. Plaintiff never received a final disposition of the Equifax dispute but, upon information and belief, Equifax verified the account, as evidenced by the fact that they continued to report the false, disputed information.

### *Credit Damages in April/May 2023*

50. Soon thereafter, the CRA Defendants began reporting that the account was in arrears, and Mr. Siegel's credit score immediately dropped by more than fifty points. For example, according to Credit Karma, his TransUnion score dropped from 767 on April 19, down to

712 around April 25, for the stated reason that the Citicards CBNA account had become 30 Days Late. A few days later, Credit Karma told him that his Equifax score had dropped from 772 down to 718 for the same reason. By May 21, Mr. Siegel's scores with TransUnion and Equifax were 678 and 691, respectively.

51. As of the filing of this action the fraudulent "Citicards CBNA" account was still the only delinquency or negative mark on Mr. Siegel's report. Before Citi reported the outstanding balance and subsequent delinquency on the card, Mr. Siegel's score had sat comfortably above 800 after four decades of good credit.

### *Plaintiff's Second FCRA Dispute*

52. On May 23, Mr. Siegel sent Experian, Equifax, and TransUnion another round of dispute letters, telling them that the Citi Mastercard was not delinquent because the alleged outstanding balance resulted from a fraud charge.

53. Mr. Siegel attached the FTC Affidavit along with his Citi Mastercard statement and other evidence.

54. On May 26, Trans Union refused to block the account in violation of the FCRA.

55. On May 28, Equifax refused to block the account in violation of the FCRA.

56. Experian, too, apparently did not block the account, upon information and belief.

57. On June 15, Trans Union verified its false reporting of the fraudulent balance on, and delinquent status of, the Citi Mastercard account.

58. On June 16, Experian verified its false reporting of the fraudulent balance on, and delinquent status of, the Citi Mastercard account.

59. Once again, Plaintiff never received a final disposition of the Equifax dispute but, upon information and belief, Equifax verified the account, as evidenced by the fact that they refused to block and then continued to report the false, disputed information.

Page **9** of **14**

### *Credit Damages in June-August 2023*

60. On June 6, Mr. Siegel visited Jack Daniels Audi of Paramus to inquire about purchasing an Audi A4 automobile. After four decades of good credit history, Mr. Siegel's credit had been above 800 before the alleged delinquency on the Citi Mastercard; that score, according to a representative from the dealership, would have qualified him for a Tier One rate of 5.99% for 60 months.

61. However, the representative told Mr. Siegel that "with your current score you'd be a tier 4 which would put you at 8.74[%] for 60 months."

62. Mr. Siegel ultimately did not purchase the car.

63. At some point, the Citi Mastercard was closed, putting Mr. Siegel in the market for a new credit card.

64. In August 2023, Mr. Siegel's application for an Apple Card was denied because "You have recently been past due." The only card Mr. Siegel has recently (indeed, ever) been reported as past due on is the Citi Mastercard. Goldman Sachs Bank USA received Mr. Siegel's credit score from TransUnion.

65. In May 2023, Plaintiff was told by his dentist's office that CareCredit was not able to offer him financing for a procedure. Mr. Siegel had to pay for the procedure in cash and suffered severe emotional stress at his perceived inability to access credit for medical procedures.

66. This emotional stress was especially acute because Mr. Siegel is a cancer survivor and because, at or around that time, Mr. Siegel's significant other was undergoing open heart surgery among other expensive procedures. Mr. Siegel's significant other eventually passed away. Ultimately, Plaintiff discovered that CareCredit denied the financing due to a technical error, and not necessarily because of his credit reports, but the perceived denial of financing for medical procedures served as a catalyst for the emotional damages caused

by each CRA Defendants' false reporting.

67. Moreover, the false information was published to third parties numerous times, including to JPMorgan Chase Bank, N.A., by Experian, in August 2023; to Synchrony Bank in November 2023 by Trans Union; and to Pentagon Federal Credit Union by Equifax in August 2023; among dozens of other publications by each Defendant.

68. At all times pertinent hereto, the conduct of each CRA Defendant as well as its respective agents, servants and/or employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for the rights of Plaintiff pursuant to the FCRA and/or NY FCRA.

69. As a direct and proximate result of the willful and negligent actions, conduct, and omissions of each CRA Defendant, Plaintiff suffered cognizable actual damages, including but not limited to emotional distress, anxiety, frustration, humiliation, embarrassment, and damage to Plaintiff's reputation for creditworthiness.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF THE FCRA BY THE CRA DEFENDANTS**
**(CONSUMER REPORTING AGENCIES)**

70. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

71. Based on the facts alleged in this Complaint, the CRA Defendants, by their respective actions and omissions, each independently violated various provisions of the FCRA including but not necessarily limited to the following violations:

    a. Defendants each violated 15 U.S.C. § 1681c-2;

    b. Defendants each violated 15 U.S.C. § 1681e(b);

    c. Defendants each violated 15 U.S.C. § 1681i(a)(1);

    d. Defendants each violated 15 U.S.C. § 1681i(a)(4);

    e. Defendants each violated 15 U.S.C. § 1681i(a)(5); and

Page **11** of **14**

  f. Defendants each violated 15 U.S.C. § 1681i(c).

72. Due to the separate and independent violations of the FCRA by the CRA Defendants, Plaintiff suffered actual damages, including but not limited to damage to Plaintiff's reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

73. These violations by the CRA Defendants of §§ 1681c-2, 1681e, and 1681i were willful, rendering each CRA Defendant liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

74. In the alternative, these FCRA violations by the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

## SECOND CAUSE OF ACTION
### VIOLATIONS OF THE NY FCRA BY THE CRA DEFENDANTS
### (CONSUMER REPORTING AGENCIES)

75. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

76. Based on the facts alleged in this Complaint, the CRA Defendants, by their respective actions and omissions, each independently violated various provisions of the NY FCRA (NY GBL §§ 380-380-u) including, but not necessarily limited to, the following violations:

  a. Defendants each violated § 380-j(a);

  b. Defendants each violated § 380-j(e);

  c. Defendants each violated § 380-f(a);

  d. Defendants each violated § 380-f(c)(3); and

  e. Defendants each violated § 380f(c)(4).

Page **12** of **14**

77. These violations by the CRA Defendants of NY FCRA §§ 380-j and 380-f were willful, rendering each CRA Defendant liable for actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to NY FCRA § 380-l.

78. In the alternative, these NY FCRA violations by the CRA Defendants were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to NY FCRA § 380-m.

79. Plaintiff is also entitled to injunctive relief restraining the CRA Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against Defendants:

1. Awarding against each Defendant actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o as well as NY GBL § 380-l and § 380-m.

2. Ordering Defendants to:

    a. immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, and (ii) cease reporting the inaccurate information to any and all persons and entities to whom the CRA Defendants reported consumer credit information; and

    b. send updated and corrected credit report information to all persons and entities to whom the CRA Defendants reported inaccurate information about Plaintiff within the last three years;

3. Enjoining the CRA Defendants from violating Plaintiff's NY FCRA rights; and

4. Such other and further relief as may be necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38 and New York Civil Practice Law and Rules ("CPLR") § 4102, Plaintiff demands a trial by jury as to all issues so triable.

*/s/ Adam G. Singer*
Adam G. Singer
**LAW OFFICE OF ADAM G. SINGER, PLLC**
One Grand Central Place
60 E. 42nd Street, Suite 4600
New York, NY 10165
212.842.2428
asinger@adamsingerlaw.com
*Counsel for Plaintiff Barry Siegel*